## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AAMIR QURESHI, *et al.*<br>    *Plaintiffs,*<br><br>v.<br><br>SIX FLAGS AMERICA LP,<br>    *Defendant* | No. 24-cv-2026-ABA |

## MEMORANDUM OPINION

Plaintiff Aamir Qureshi was riding a roller coaster during a school trip with his high school senior class when he allegedly was "forcefully thrown about causing him to bang his face," causing serious facial injuries. Aamir, along with his parents Ileana and Naved Qureshi (collectively, "Plaintiffs"), filed this action in the Circuit Court for Prince George's County, Maryland, against Six Flags America LLP ("Defendant" or "Six Flags"), asserting negligence claims.

Aamir alleged damages "in the amount of $75,000," based on pain and suffering, and impact on his "social, spiritual and recreational activities." ECF No. 3 ("Compl.") ¶ 20. His parents alleged damages of $7,500, comprising the medical expenses they allegedly incurred to treat Aamir's injuries. Six Flags removed the case to this court. Plaintiffs have moved to remand, contending "the matter in controversy" does not exceed $75,000, the threshold for diversity jurisdiction. 28 U.S.C. § 1332(a).

1

## BACKGROUND

At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Plaintiffs allege as follows.

On June 4, 2021, Aamir was a 17-year-old high school senior who joined a class trip to Six Flags America in Upper Marlboro, Maryland. Compl. ¶¶ 1-2, 6. Around 4:00 p.m., he rode the "Superman: Ride of Steel" roller coaster. *Id.* ¶ 7. The passenger restraint system "consists of a seatbelt and a lap bar; the coaster provides no upper body restraint." *Id.* ¶ 9. He alleges that during the ride he was "violently jerked and thrown about in his seat," causing him to "bang his face on the forward structure of the coaster car multiple times." *Id.* ¶ 11. He suffered "serious injuries to his face, right eye, and nose, including a closed orbital fracture of the right eye, and related soft tissue injuries." *Id.* ¶ 12. His parents incurred "reasonable and necessary medical expenses" as a result, totaling approximately $7,500. *Id.* ¶¶ 13, 22.

Plaintiffs filed this action in the Circuit Court for Prince George's County, Maryland on May 21, 2024. Plaintiffs served the complaint on Defendant on June 13, 2024. *See* ECF No. 14 at 1. On July 12, 2024, Six Flags filed a notice of removal in this Court, contending it "is entitled to removal because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000.00." ECF No. 7 ¶ 9. Plaintiffs have filed a motion to remand, contending "the respective claims of each Plaintiff do not

exceed the jurisdictional $75,000 amount in controversy." ECF No. 13 ("Mot.") at 1. Defendant has opposed the motion. ECF No. 14 ("Opp."). Plaintiff has filed a reply. ECF No. 15 ("Reply").

## DISCUSSION

The parties do not dispute that complete diversity of citizenship exists between Plaintiffs and Defendant: all Plaintiffs are residents of Virginia, and Six Flags is a limited partnership whose members, for diversity purposes, are citizens of Ohio and Colorado. *See* ECF No. 7 ¶ 9. And only one plaintiff needs to establish the amount-in-controversy threshold for federal diversity jurisdiction; supplemental jurisdiction attaches to other claims that do not satisfy the threshold. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 555 (2005) (citation omitted).

Ordinarily "the sum demanded in good faith in the initial pleading" is "deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). And ordinarily, multiple plaintiffs' claims are not aggregated for purposes of calculating the amount in controversy, *Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1412 (4th Cir. 1994) ("It is fundamental that each plaintiff must demonstrate the jurisdictional basis and allege the necessary amount in controversy."), at least where plaintiffs do not "unite to enforce a single title or right in which they have a common and undivided interest." *Glover v. Johns-Manville Corp.*, 662 F.2d 225, 231 (4th Cir. 1981). If those default rules had no exceptions, this Court would not have jurisdiction, because the largest claim asserted by any individual Plaintiff is Aamir's claim for $75,000 in pain-and-suffering

3

damages. But there are exceptions to those rules. Six Flags invokes two of them, contending this Court has jurisdiction because (1) although Aamir's complaint capped his damages at $75,000, in fact Plaintiffs seek more than that, as reflected in a $95,000 settlement demand made by Plaintiffs, and (2) although separate plaintiffs' damages claims are not ordinarily aggregated, Aamir's and his parents' claims should be aggregated under the "single title or right" exception, *see Glover*, 662 F.2d at 231. For the reasons explained herein, the Court agrees with Six Flags on the first argument; the Court need not and does not (at least at this time) reach the second argument.

On July 31, 2024, shortly after Six Flags filed its notice of removal, Plaintiffs' counsel emailed a "settlement package." ECF No. 14-1. The cover email was dated July 31, 2024, but attached a letter dated two years earlier, June 17, 2022, that listed medical expenses totaling $7,633.45, provided a list of "Injuries/Treatment" as well as the specific injuries Aamir had been diagnosed with and the applicable procedure codes, and concluded by stating, "Please be advised of our demand for settlement in the amount of $95,000.00." *Id.* Although the demand did not expressly specify which portion was on behalf of Aamir, and which on behalf of the parents, mathematically the letter meant that Plaintiffs were seeking a global settlement, of which $87,366.55 constituted their demand on behalf of Aamir for his pain and suffering claim. Six Flags contends that this settlement demand shows that Plaintiffs consider Aamir's claim to exceed $75,000, the jurisdictional threshold.

4

Plaintiffs' response to this argument is relegated to a footnote in their reply brief in support of remand:

> Defendant attempts to make an issue out of a settlement letter that was passed on to counsel from the office of undersigned Plaintiffs' counsel following a conference call that occurred between counsel on July 31st of this year. For context purposes, the referenced conference was not held to discuss settlement, but rather was a "meet and confer" conference to discuss the substance of the instant motion. The letter was sent to counsel at the time per their request as they purported to be uninformed as to the extent of Aamir Qureshi's medical treatment. Obviously, much had passed since the 2022 letter was initially sent to Defendant's claims representative, and when the case did not resolve, the Plaintiffs made decisions, as they were entitled to do, as to how much to claim in the impending lawsuit.

Reply at 2 n.1.

As noted above, the applicable jurisdictional statute, as amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, provides in pertinent part as follows:

> If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>
> . . .
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2).

This means that ordinarily where a plaintiff seeks damages and specifies an amount, that "sum," if "demanded in good faith," is "deemed to be the amount in controversy." *Id.* But that amount is not conclusive. Such a case may be removed "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a) [currently $75,000]." *Id.* § 1446(c)(2)(B). "The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)). A removing defendant opposing a remand motion must show that "it is more likely than not that 'a fact finder might legally conclude that' damages will exceed the jurisdictional amount." *Id.* (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)); *see also* Arthur R. Miller, *Determination of the Amount in Controversy—Cases Removed from State Court*, 14B Fed. Prac. & Proc. Juris. § 3703 (5th ed.) ("The inquiry, as in original actions, is not whether the alleged injury actually caused damages in excess of the jurisdictional amount but whether a fact finder could conclude that it did.").[1]

---

[1] Some cases that preceded the 2011 amendments lay out a "legal certainty" rather than "preponderance of the evidence" standard. *See, e.g., JTH Tax, Inc. v. Frashier*, 624 F.3d 635 (4th Cir. 2010) ("If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.'") (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (emphasis omitted)). Following those 2011 amendments, defendants "do not need to prove to a legal certainty that the amount in

6

Thus, the question presented here is whether Six Flags has shown by a preponderance of the evidence that "the amount that will be put at issue in the course of the litigation," see Scott, 865 F.3d at 196, exceeds $75,000.

As an initial matter, although Federal Rule of Evidence 408 renders settlement discussions inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," such information may be admitted or used "for another purpose," such as assessing the amount in controversy for jurisdictional purposes. F.R.E. 408; see also Cohn v. Petsmart, Inc., 281 F.3d 837 (9th Cir. 2002) (holding that Rule 408 was "inapplicable" "because this evidence was not offered to establish the amount of [defendant's] liability," but rather to show plaintiff's "assessment of the value of [plaintiff's] trademark").

The question then becomes whether Plaintiff's settlement demand here can satisfy Defendant's burden to show "the amount that will be put at issue in the course of the litigation." Scott, 865 F.3d at 196. The Fourth Circuit does not appear to have addressed this question. Although a settlement demand should not be treated as "the sole determinative factor to consider when assessing the jurisdictional amount in controversy," Doughty v. Hyster New England, Inc.,

---

controversy requirement has been met." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88-89 (2014) (citing legislative history). And "[a]lthough the 2011 amendment . . . is silent on the question of which party bears the burden on the issue," there is "voluminous agreement . . . both before and after 2011 . . . that the removing defendant, as the party seeking to invoke federal jurisdiction, bears the burden and must show that the amount in controversy exceeds the jurisdictional minimum." Arthur R. Miller, *The Allocation of Burdens in Determining the Amount in Controversy*, 14B Fed. Prac. & Proc. Juris. § 3704 (5th ed.).

344 F. Supp. 2d 217, 219 (D. Me. 2004), circuits that have addressed the issue have held that courts may rely on such information as part of assessing whether the amount in controversy exceeds the jurisdictional threshold. *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 n.2 (7th Cir. 2011) ("Even though settlement offers are inadmissible to prove liability under Rule 408 of the Federal Rules of Evidence, they are admissible to show that the amount in controversy for jurisdictional purposes has been met."); *McPhail*, 529 F.3d at 956 ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation. To this end, documents that demonstrate plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal, even though they cannot be used to support the ultimate amount of liability."); *Cohn*, 281 F.3d 837 ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.").

Notwithstanding having made a settlement demand of $95,000, Plaintiffs argue in the footnote quoted above that the demand should be disregarded because (1) the July 2024 discussion that prompted Plaintiffs to re-forward the demand letter was "not held to discuss settlement" but rather "to discuss the substance of [the remand] motion," and (2) the original demand was drafted in 2022, before Plaintiffs drafted the complaint that sought damages for Aamir "in the amount of $75,000." Reply at 2 n.1; Compl. ¶ 20. But the correspondence itself was clearly a settlement demand, and Plaintiffs do not claim that the

8

$95,000 settlement demand was in bad faith. They point to the *ad damnum* clause in their complaint, but as explained above, although such a sum is the default amount in controversy, it is not conclusive.

And crucially, Plaintiffs have not disclaimed the $95,000 demand. In some circumstances, courts permit a plaintiff seeking remand to "agree not to demand or accept more than the jurisdictional amount as a condition of remanding the case to state court." Arthur R. Miller, *Determination of the Amount in Controversy—Cases Removed from State Court*, 14B Fed. Prac. & Proc. Juris. § 3703 (5th ed. 2024). If the plaintiff declines to stipulate "that he is not seeking and will neither demand nor accept any recovery in excess of $75,000 exclusive of costs and interest"—at least when considered alongside other evidence of the amount in controversy—"the inference arises that he thinks his claim may be worth more." *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000); *see also, e.g.*, *Rhythm of Life Corp. v. Hartford Fin. Servs. Grp. Inc.*, 522 F. Supp. 3d 4, 8 (S.D.N.Y. 2021) (along with other evidence that the amount of controversy exceeded $75,000, considering that plaintiffs "declined an invitation to stipulate the value of their underlying claim below the jurisdictional threshold").

Plaintiffs have not proposed such a stipulation here. Short of such disclaimer, the Court finds that Defendant has satisfied its burden to show that "a fact finder might legally conclude that damages will exceed the jurisdictional amount." *Scott*, 865 F.3d at 196 (citation omitted).

It is not clear, however, whether Plaintiffs considered this option. The Court will give Plaintiffs an opportunity to do so, as set forth in the order that accompanies this opinion. If Plaintiffs wish to affirmatively and irrevocably disclaim via stipulation any demand for damages on behalf of Aamir exceeding $75,000, the Court would likely consider Defendant's evidence of the amount in controversy to have been rebutted, at least with respect to Aamir's claim.

If Plaintiffs elect to so stipulate, there will remain the question, however, whether Aamir's claims for damages based on pain and suffering, and his parents' claims to recoup the medical expenses they paid for his treatment, should be aggregated such that federal subject matter jurisdiction would attach if their claims collectively totaled over $75,000. As noted above, separate plaintiffs' claims for damages may be aggregated when they seek to "enforce a single title or right in which they have a common and undivided interest." *Glover*, 662 F.2d at 231. The precise contours of when aggregation is appropriate are not always clear.[2] Because the present record establishes that Aamir's claim alone exceeds the amount-in-controversy threshold, the Court

---

[2] *See* Arthur R. Miller, *Aggregation of Claims—History and General Principles*, 14B Fed. Prac. & Proc. Juris. § 3709 (5th ed. 2024) ("The traditional rules relating to the aggregation of multiple claims to satisfy an amount in controversy requirement have long been thought to be in an unsatisfactory state. The longstanding principles on this subject evolved haphazardly and with little reasoning. They serve no apparent policy and their application largely turns on a mystifying conceptual test."); *see also id.* (describing the oft-cited standard—which has been articulated as turning on whether plaintiffs' claims are "separate and distinct," or "common," or "undivided"—as "arcane and confusing," and originating "almost two centuries ago at a time when the joinder of parties was far less understood and certainly far more limited than it is in contemporary practice").

need not and does not decide at this time whether Plaintiffs' claims may or should be aggregated to calculate the amount in controversy. If Plaintiffs do so stipulate—but do not stipulate that they will not *collectively* seek over $75,000—then that issue will require a ruling, and the Court will address it at that time. If such a stipulation were to irrevocably cap Plaintiffs' *collective* claims at $75,000, then the aggregation issue would not be presented either, and remand would likely be appropriate regardless of whether it would be appropriate to aggregate Plaintiffs' claims.

## CONCLUSION AND ORDER

For these reasons, Defendants have shown by a preponderance of the evidence that the amount in controversy exceeds $75,000, and Plaintiffs' remand motion will be denied. A separate order follows.

Date: November 19, 2024

_____
Adam B. Abelson
United States District Judge